**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| DENISE BRAGG, PAULA GREGORY, BRENDA ABOUARRA, HYLY BARTOS, MELISSA BLOCKER, VIRGINIA BOTRUFF, WENDY BROWNING, CHRISTINE BURKE, THOMAS F. BURKE, JENNIFER CALL, DEBORAH CHAMBERS, DELLA COLLINS, TERESA COOK, MADELINE FAIELLA, VICKIE FISCHER, BERNADETTE GILLESKI, EVELYN GRAHAM, KAREN HAGER, AMY HOLT, MARCIA KANE, DEBRA LANGENDORF, CHRISTINA LATHROP, TAMMY LAYTON, HELEN LINGLE, KIM LOCKMAN, SANDRA LOFARO, MARYANN MACK, PATRICIA MILLER, VIRGINIA MURPHY, CAROL NORRIS, MARTI NORTHOVER, BARBARA NOWAK, VICTORIA OVERTON, BARBARA PARIS, DARLENE REISS, SUSAN RICHARDS, VERNA ROSENBERG, CAROL J. SALES, SUSAN SCHMIDT, FELICIA SCOTT, EUGENE SCOTT, DEANNA STEVENS, CORALENE STEVERSON, JOSEPHINE TEDESCHI, BARBARA ROSE TEWKSBURY, BRENDA J. THOMPSON, DONNA TRAVERS, KATHLEEN VERTZ, and HEIDI WOOLEY, Plaintiffs, v. JOHNSON & JOHNSON and ETHICON, INC., Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § Case No. _____ |

---

**NOTICE OF REMOVAL**

---

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Johnson & Johnson, Inc. and Ethicon, Inc. "(Defendants") timely remove this pelvic

mesh products liability action styled *Denise Bragg, et al. v. Johnson & Johnson, et al.*, which has been filed by forty-nine individual Plaintiffs from fifteen different states, from the 241st Judicial District Court of Smith County, Texas, to the United States District Court for the Eastern District of Texas, Tyler Division.[1]  The United States District Court for the Eastern District of Texas has original subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.   In support of removal, Defendants further state as follows:

1.   On or about July 18, 2014, forty-nine Plaintiffs from fifteen states ("Plaintiffs") filed an action styled *Bragg, et al., v. Johnson & Johnson, et al.,* in the Seventh Judicial District Court of Texas, Case No. 14-1796-A.  The case was transferred, on or about August 12, 2014, to the 241st Judicial District Court of Smith County, Texas.   Pursuant to 28 U.S.C. § 1446(a), a true and correct certified copy of the docket sheet and a copy of all process, pleadings, and orders is attached as Exhibit A, along with Exhibit B Traylor Affidavit attesting to the file-marked Original Answers, Subject to the Special Appearances of Defendants.  The forty-seven female Plaintiffs assert claims for (1) Negligence, (2) Strict Liability – Design Defect, (3) Strict Liability – Manufacturing Defect, (4) Strict Liability – Failure to Warn, and (5) Vicarious Liability.  (Am. Pet. ¶¶ 43-59).  The two male Plaintiffs assert claims for Loss of Consortium.  (Am. Pet. ¶ 61.) Plaintiffs' claims allegedly concern "Gynecare Gynemesh PS Prolene" transvaginal mesh products. (Am. Pet. ¶ 10.)

---

[1] By removing this action to this Court, Defendants do not waive any defenses, objections, or motions available under state or federal law.  Defendants expressly reserve the right to move for dismissal of some or all of Plaintiffs' claims and/or seek dismissal on grounds of lack of personal jurisdiction, insufficient or improper service of process, improper venue, or under the doctrine of forum non conveniens.

2.   Thousands of pelvic mesh product liability cases based upon diversity jurisdiction and alleging injuries similar to those claimed by Plaintiffs, allegedly arising from the implantation of various mesh products manufactured by multiple companies, have been filed in federal district courts across the country.   Accordingly, the United States Judicial Panel for Multidistrict Litigation ("JPML") has established six separate Multi-District Litigations ("MDLs") for claims related to each manufacturer's mesh products in the United States District Court for the Southern District of West Virginia.   *See, e.g., In re: Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359 (J.P.M.L. 2012) (Transfer Order granting centralization of Ethicon MDL No. 2327 ("Ethicon MDL")).

3.   Defendants intend to transfer this action to the Ethicon MDL and will soon provide the JPML notice of this action under the "tag-along" procedure required by the JPML rules.   In addition, Defendants will seek a stay of these proceedings in this case in the interests of judicial efficiency and consistency.   In cases similar to the instant multiple-plaintiff suit, other federal district courts across the country have stayed the proceedings to allow the JPML to resolve plaintiffs' objections, if any, to the Conditional Transfer Order ("CTO").   These stays will ultimately allow Honorable Joseph R. Goodwin, the United States District Judge presiding over the Ethicon MDL, to rule on any motion to remand filed by Plaintiffs, which permits consistent rulings and fosters other judicial economies.

4.   Plaintiffs seek to evade these consolidated proceedings by joining one Texas Plaintiff with forty-eight other out of state Plaintiffs ("Out of State Plaintiffs"), and jointly filing all forty-nine individual claims as one suit in Texas state court.   (*See* Am. Pet. ¶¶ 2-4.)  Of the forty-eight Out of State Plaintiffs, one is alleged to be a citizen of New Jersey, six are alleged to be citizens of North Carolina, seven are alleged to be citizens of Wisconsin, four are alleged to be citizens of

Mississippi, three are alleged to be citizens of South Carolina, four are alleged to be citizens of New Hampshire, one is alleged to be a citizen of New Mexico, two are alleged to be citizens of Massachusetts, two are alleged to be citizens of New York, nine are alleged to be citizens of Washington, four are alleged to be citizens of Maryland, two are alleged to be citizens of Montana, one is alleged to be a citizen of South Dakota, and two are alleged to be citizens of Rhode Island. (*See id.*)

5.      Under the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014)**,** the Out of State Plaintiffs cannot establish personal jurisdiction over Defendants in Texas.  *Accord Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).  In the interests of clarity and efficiency, Defendants urge this Court to rule on personal jurisdiction *before* determining whether this Court has subject matter jurisdiction in this case.  This Court has every right to do so, and in the exercise of its sound discretion ought to do so where, as here, a case presents a straightforward question of personal jurisdiction and a more difficult question of subject matter jurisdiction.  *See Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574 (1999) (holding that, in a case removed from state court, a district court has discretion to resolve issue of personal jurisdiction before subject matter jurisdiction, and affirming the district court's decision to do so in a case which presented a "straightforward" personal jurisdiction question and a "difficult" subject matter jurisdiction question); *followed, Pervasive Software Inc. v. Lexware GMBH & Co.,* 688 F.3d 214, 232 (5th Cir. 2012) ("Accordingly, we see no error in the district court's decision to dispose of the personal jurisdiction issue first and in not proceeding further after concluding that it lacked personal jurisdiction over Lexware.").

6.  Even if the Court chooses to decide subject matter jurisdiction before resolving personal jurisdiction, removal is still proper.  This Court can exercise subject matter jurisdiction over this

case because the properly joined parties are completely diverse.  The New Jersey Plaintiff is an improper party under two distinct theories.  First, the New Jersey Plaintiff is improperly joined.  Under the doctrine of joinder, the Court can simply ignore the citizenship of the improperly joined parties and determine if the remaining parties are completely diverse; it would then not need to sever the cases to address the subject matter jurisdiction issue.    Second, the joinder of the one New Jersey Plaintiff is a sham—she is included solely in an exercise of jurisdictional manipulation which the Supreme Court has repeatedly explained federal courts should guard against and prevent. *Mississippi ex rel. Hood v. Au Optronics Corp.*, 134 S. Ct. 736, 745 (2014).  Under these circumstances, this Court should sever the New Jersey Plaintiff from this case, and then determine that subject matter jurisdiction exists over the remaining parties, who will then be completely diverse.

## I.   THIS COURT CAN AND SHOULD RESOLVE PERSONAL JURISDICTION BEFORE RULING ON SUBJECT MATTER JURISDICTION.

### A.   This Court Has Discretion to Choose Among Preliminary Jurisdictional Issues.

7.  This Court has the authority to decide personal jurisdiction before subject matter jurisdiction.  Jurisdictional questions ordinarily must be resolved before addressing the merits, but it is well-established that jurisdictional questions may be decided in any order.  *See Lance v. Coffman*, 549 U.S. 437, 439, (2007) (affirming the principle that "there is no unyielding jurisdictional hierarchy");   *Ruhrgas*, 526 U.S. at 585 ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

### B.   This Court Should Follow *Ruhrgas* and Decide Personal Jurisdiction Before Subject Matter Jurisdiction.

8.  This Court should follow *Ruhrgas* and, applying *Daimler* and *Goodyear*, find that the Out of State Plaintiffs cannot establish personal jurisdiction over Defendants in Texas before ruling on Plaintiffs' (anticipated) motion to remand.  *Ruhrgas* involved the same set of motions

this Court is likely to face—a motion to dismiss for lack of personal jurisdiction and a motion to remand for an alleged lack of federal subject matter jurisdiction. The Supreme Court affirmed the district court's decision to resolve personal jurisdiction and dismiss the non-diverse parties before examining the motion to remand. *See Rhurgas*, 526 U.S. 574 (holding that "in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy"). *See also Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) ("*Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues.").

9. Following *Ruhrgas*, three discretionary factors support beginning with personal jurisdiction in this case. First, the personal jurisdiction question invokes the very limits of a court's authority, as it arises directly from the constitutional protections of due process. In sharp contrast, the potential issue of subject matter jurisdiction in this case—a lack of complete diversity where both an out of state plaintiff and out of state defendant have been joined—is purely statutory. *See Ruhrgas*, 526 U.S. at 584 ("[T]he impediment to subject-matter jurisdiction on which [plaintiff] relies . . . rests on statutory interpretation, not constitutional command. . . . In contrast, [defendant's personal jurisdiction argument] relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case.").

10. Second, "judicial economy and restraint" support beginning with personal jurisdiction. *Ruhrgas*, 526 U.S. at 586. The Court in *Ruhrgas* explained that "in most instances subject-matter jurisdiction will involve no arduous inquiry[,]" and in such cases "expedition" and federalism suggest beginning with subject matter jurisdiction. 526 U.S. at 587. But where, as here, a case presents a "straightforward personal jurisdiction issue" and the subject-matter jurisdiction question is more difficult, these discretionary considerations favor deciding personal

jurisdiction first.    526 U.S. at 586   ("the district court may find that concerns of judicial economy and restraint are overriding").    Under the recent decision in *Daimler*, the personal jurisdiction question here is very clear—the Out of State Plaintiffs simply cannot establish personal jurisdiction over Defendants in Texas.    The subject matter jurisdiction question, by contrast, presents a more searching inquiry, as it is grounded in the improper  and sham joinder of the New Jersey Plaintiff. *See* 526 U.S. at 579-80, 587-88 (noting that the notice of removal asserted improper joinder and finding that inquiry "difficult"); *Carey v. Sub Sea Int'l, Inc.*, 211 F.3d 594 (5th Cir. 2000) (affirming dismissal of non-diverse parties for lack of personal jurisdiction rather than beginning with question of improper joinder); *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 899 (N.D. Iowa 2000) (deciding personal jurisdiction first after noting that improper joinder question was "a rather complicated one" and "the more unusual" because it also involved improper joinder of a plaintiff).

11. Finally, this Court should begin with personal jurisdiction to provide clarity and certainty in this litigation.  *Ruhrgas* provides an indisputable avenue for dismissal of the New Jersey and other Out of State Plaintiffs and the subsequent transfer of this action to the Ethicon MDL.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 94-95 (2010) (noting the Supreme Court's discretionary preference for "[s]imple jurisdictional rules" that "promote greater predictability" rather than more "[c]omplex jurisdictional tests" which "eat[] up time and money" and "produce appeals").

**B. The Out of State Plaintiffs Cannot Establish Personal Jurisdiction over Defendants in Texas.**

12.    The burden of proof rests with each Out of State Plaintiff to make a prima facie showing that the court has personal jurisdiction over each defendant. *See Glenn v. BP P.L.C. (In re BP P.L.C. Secs. Litig.)*, 2012 U.S. Dist. LEXIS 92854, at * 30-31 (S.D. Tex. July 5, 2012) (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Johnston v. Multidata*

*Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  The Out of State Plaintiffs cannot establish personal jurisdiction over Defendants in Texas.  In Texas, specific personal jurisdiction is a claim-specific inquiry that must be established for each claim brought by each plaintiff against each defendant.  *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause.").  The Court does not have specific jurisdiction over the separate claims of the Out of State Plaintiffs because none of the Out of State Plaintiffs alleges an injury in Texas.  The Court does not have general jurisdiction because none of the Out of State Plaintiffs alleges that Defendants are incorporated in Texas or that Texas is their principal place of business.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (limiting the exercise of general jurisdiction over a business corporation to its state of incorporation or principal place of business).  Plaintiffs plainly acknowledge that Defendants are incorporated under the laws of the State of New Jersey and that they "do[] not maintain a regular place of business in this state." (Am. Pet. ¶¶ 5 (Johnson & Johnson), 6 (Ethicon, Inc.).)

13. Once the Court dismisses the Out of State Plaintiffs, complete diversity of citizenship exists between the remaining Texas Plaintiff and the Defendants.  Accordingly, this case may be transferred to the Ethicon MDL where it properly belongs, and extensive discovery, motion practice, evidentiary rulings, and one pelvic mesh trial having already occurred (with another trial of a different mesh product set for later this month).

## II.  REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A).

14. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. Once the Out of State Plaintiffs Are Dismissed, This Court Will Have Subject Matter Jurisdiction Over This Case.

#### 1) The amount in controversy requirement is satisfied.

15. Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[2]

16. It is facially evident from the Amended Petition that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (quoting *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). A petition that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (upholding removal based on a complaint seeking recovery in tort for "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization").

---

[2] The preponderance of the evidence standard was recently reaffirmed in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. According to the House Report accompanying the bill, "circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied. The 'sum claimed' and 'legal certainty' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it." H.R. Rep. No. 112-10, at 15 (2011). Accordingly, "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 16.

17. Plaintiffs allege, *inter alia*, that "the Pelvic Mesh Products have high failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating revision surgeries, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiffs." (Am. Pet. ¶ 19.)  The Amended Petition further alleges that "[a]s a result of the implantation of the Pelvic Mesh Products, the female Plaintiffs suffered and will continue to suffer serious bodily injuries."  (Am. Pet. ¶ 40.)  Plaintiffs allege a multitude of injuries, "including pain, discomfort, pressure, difficulty voiding urine, continued incontinence, discharge, scarring, infection, odor, and bleeding." (*See id.*)  The nature of these allegations establishes that the amount in controversy is met.

18. Plaintiffs request damages for past and future "[p]hysical pain and mental anguish"; past and future disfigurement; past and future physical impairment; past and future lost earning capacity; and past and future medical expenses.  (Am. Pet. ¶ 60.)  The male Plaintiffs also request damages for loss of "the love, companionship, society and consortium of their respective spouses (the female Plaintiffs)." (Am. Pet. ¶ 61.) In addition, each one of the Plaintiffs seeks exemplary damages, which are also to be considered in determining the amount in controversy. *See St. Paul Reins. Co.*, 134 F.3d at 1253; *Gutierrez v. Swift Transp. Co.*, No. EP-10-CV-406-KC, 2011 WL 318294, at *3 (W.D. Tex. Jan. 28, 2011).

19. Although Defendants deny any liability to Plaintiffs, these allegations of general and special damages, punitive damages, and attorneys' fees clearly place more than $75,000.00, exclusive of interest and costs, in controversy.   *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (holding that it was "facially apparent" that the amount-in-controversy was met from allegations of injuries to wrist, knee, patella and upper and lower back, seeking recovery for medical expenses, pain and suffering, mental anguish and lost wages and earning

capacity as well as permanent disability and disfigurement); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 646 (S.D. Tex. 2005) (holding that "facially apparent" standard was satisfied by allegations of physical impairment, physical disfigurement, seeking damages for past and future pain and suffering, lost wages and income and punitive and exemplary damages).  As such, it is facially apparent by a preponderance of the evidence that the amount in controversy in this action exceeds the jurisdictional minimum of $75,000.00.

       2)  <u>Complete diversity of citizenship exists between the properly joined parties.</u>

20. For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Johnson & Johnson, Inc. is a citizen of the State of New Jersey because it is incorporated in the State of New Jersey and has its principal place of business in New Brunswick, New Jersey.

21. For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Ethicon, Inc., is a citizen of the State of New Jersey because it is incorporated in the State of New Jersey and has its principal place of business in Somerville, New Jersey.

22. Plaintiffs in this case include 49 Plaintiffs from 15 states:  Maryland (4 Plaintiffs), Massachusetts (2 Plaintiffs), Mississippi (4 Plaintiffs), Montana (2 Plaintiffs), New Hampshire, (4 Plaintiffs), New Jersey (1 Plaintiff), New Mexico (1 Plaintiff), New York (2 Plaintiffs), North Carolina (6 Plaintiffs), Rhode Island (2 Plaintiffs), South Carolina (3 Plaintiffs), South Dakota (1 Plaintiff), Texas (1 Plaintiff), Washington (9 Plaintiffs), and Wisconsin (7 Plaintiffs).  (Am. Pet. ¶¶ 2-4.)

23. The Out of State Plaintiffs should be dismissed from this case for lack of personal jurisdiction.  The remaining Plaintiff is alleged to be a citizen of Texas.  (Am. Pet. ¶ 2.)

24. The citizenship of the Texas Plaintiff is indisputably diverse from that of the Defendants.

**B. Even If Subject Matter Jurisdiction Is Decided First, This Court Has Subject Matter Jurisdiction Over This Case.**

25. Even if subject matter jurisdiction is decided before personal jurisdiction, this Court has subject matter jurisdiction in this case because complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332(a) over the properly joined parties.

    1)  <u>The amount in controversy requirement is satisfied.</u>

26. The amount in controversy requirement is satisfied for each Plaintiff. (*See supra* at ¶¶ 15-19.)

    2)  <u>Complete diversity of citizenship exists over the properly joined parties.</u>

27. Forty-eight of the forty-nine Plaintiffs are indisputably diverse from Defendants. (*See supra* at ¶¶ 20-22.) The one New Jersey Plaintiff should not be considered when determining this Court's diversity jurisdiction because (a) she is improperly joined, as her claims have no reasonable basis under Texas law and (b) her joinder is a sham, and this Court should exercise its right to sever in order to protect Defendants' right to remove and prevent Plaintiffs' attempted diversity-destroying jurisdictional manipulation which the Supreme Court has expressly asked that the federal courts guard against.

    3)  <u>The New Jersey Plaintiff is improperly joined, as her claims have no reasonable basis under Texas law.</u>

28.     Improper joinder is an exception to the complete-diversity requirement. *See Smallwood v. Ill. Central R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004). There is no question that the New Jersey Plaintiff here was joined solely in an attempt to prevent removal. A federal court may assume jurisdiction over the case, dismiss the non-diverse party, and thereby retain subject matter jurisdiction over the remaining claims if joinder of the non-diverse party is a sham or improper. *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 567 (N.D. Tex. 2009) (citing *Ralli-Coney, Inc. v. Gates*, 528 F.2d 572, 575-76 (5th Cir. 1976)). A party has been

improperly joined if there is "no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000).

29.     The one New Jersey Plaintiff is improperly joined because her claims may not be brought under the U.S. Constitution in the courts of Texas.   Under Texas law, personal jurisdiction can only be exercised to the extent permitted by the Due Process Clause.   *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335-36 (5th Cir. 1999).   There are two basic ways to establish personal jurisdiction—specific jurisdiction and general jurisdiction.   The one New Jersey Plaintiff cannot establish specific jurisdiction in Texas because that Plaintiff does not allege that her injury occurred in Texas.   *See id.* (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)); *Felch v. Transportes La-Mex SA DE CV*, 92 F.3d 320 (5th Cir. 1996) (finding that the court had no personal jurisdiction over plaintiff's tort claim because plaintiff's injury did not arise from defendant's contacts with Texas, as the injury occurred outside of Texas and "all of defendant's negligence, if any, occurred" outside of Texas).   The Texas court does not have general jurisdiction over the claims because neither one of the Defendants is incorporated in Texas and neither has its principal place of business there.   *See Dominguez v. Black Elk Energy, LLC*, 2014 U.S. Dist. LEXIS 19694, at *13 (S.D. Tex. Feb. 18, 2014) ("For personal jurisdiction to exist over an out-of-state defendant in Texas, however, the defendant would have to be subject to general jurisdiction") (citing *Daimler*, 134 S. Ct. at 760) (limiting the exercise of general jurisdiction over a business corporation to its state of incorporation or principal place of business).

30. The New Jersey Plaintiff is improperly joined, as there is no permissible basis under the Due Process Clause for the courts of Texas to adjudicate her claims against the Defendants. Because the court may ignore the citizenship of improperly joined non-diverse parties for purposes of establishing subject matter jurisdiction and will dismiss the improperly joined parties from the case, the Court need not sever the cases as removal is proper simply because complete diversity of citizenship exists among the non-New Jersey Plaintiffs and the Defendants.

4) <u>Alternatively, the joinder of the New Jersey Plaintiff is a sham, and this Court should sever Plaintiffs' claims and enforce Defendants' right to remove.</u>

31. Alternatively, this Court should deny the motion to remand (if one is filed) by severing and dismissing the claims brought by the New Jersey Plaintiff under Federal Rule Civil Procedure 21 and rejecting the blatant jurisdictional gamesmanship of Plaintiffs.   The federal courts are authorized to exercise their Rule 21 power to sever when joinder is merely a sham designed to defeat removal, as Plaintiffs have done here by artificially joining the New Jersey Plaintiff to this Texas case.

32. A plaintiff may not destroy diversity through the sham or improper  misjoinder of parties or claims.  *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).  The Fifth Circuit has expressly recognized the validity of and vital need for the improper misjoinder rule and following the Eleventh's Circuit's lead have adopted this doctrine, including in circumstances nearly identical to those presented here.  *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 592, 533 (5th Cir. 2006) ("If these [FRCP 20(a) joinder] requirements are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants."); *In re Benjamin Moore & Co.,* 318 F.3d 626,

14

630-31 (5th Cir. 2002) (noting "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

33. Plaintiffs allege that the joinder of their claims is proper because their "claims arise out of a series of transactions or occurrences and there are questions of law and fact common to Plaintiffs' claims." (Am. Pet. ¶ 10.)  Plaintiffs, however, allege absolutely no factual connection among their claims, aside from the basic fact that they each were allegedly implanted with one of Defendants' pelvic mesh products.  *See Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010 WL 767558, *2 (S.D. Tex. Mar. 3, 2010) (noting that "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective drug or medical device," and holding claims were improperly joined).

34. The Amended Petition does not allege injuries specific to each Plaintiff, but the injuries listed in the Amended Petition, *supra* ¶ 18, span a broad array of distinct, different injuries that Plaintiffs have failed to attribute to any single Plaintiff.  *See Welch v. Merck Sharpe & Dohme Corp.*, MDL No. 2243, 2012 U.S. Dist. LEXIS 48114, at * 3 (D.N.J. Apr. 3, 2012) (finding improper misjoinder where "[e]ach Plaintiff broadly alleges 'a long bone fracture" but "no Plaintiff actually identifies which long bone was fractured, the type of fracture sustained, or how the fracture occurred.").

35. In addition to the varying alleged injuries purportedly related to Plaintiffs' use of the pelvic mesh products at issue, each one of the Plaintiffs undoubtedly has a unique medical history, which includes highly individualized conditions and symptoms their surgeries were intended to treat, as well as their unique gynecological, urological, and other medical histories.  *See Boschert v. Pfizer*, No. 4:08-cv-1714, 2009 U.S. Dist. LEXIS 41261, at *3-5 (E.D. Mo. May 14, 2009) (holding plaintiffs misjoined where the only commonality was the drug ingested and

citing cases holding misjoinder where plaintiffs "had different exposures to the drug, different injuries, and different medical histories" and where plaintiffs had many differences "including their unique medical histories"). Such significant variations among plaintiffs – like the variations here – have also been fatal to efforts at joinder in Texas state courts. *See, e.g., Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 358-59 (Tex. App. – Austin 1999, no pet.) (finding the trial court properly severed the claims of out-of-state plaintiffs because "all but two of the plaintiffs received their implants from different physicians," putting the learned intermediary doctrine in play, and because the non-state plaintiffs' claims would be determined by foreign states' laws); *In re Jobe Concrete Prods., Inc.*, No. 08-01-00351-cv, 2001 WL 1555656, at *8-9 (Tex. App. – El Paso Dec. 6, 2001, no pet.) (granting mandamus relief and finding the trial court erred in failing to sever plaintiffs' claims because they did not arise out of the same transaction when "[e]ach plaintiff's exposure to the blasting and emission of substances, timing of the exposure, type of injury, causation, and damages will vary from plaintiff to plaintiff," even though the claims would share common questions of law).

36. Given that the forty-seven female Plaintiffs are from fifteen different states, the pelvic mesh products for each of the Plaintiffs were likely implanted by different physicians, for different medical reasons, at different medical facilities across the country. Indeed, the Amended Petition acknowledges that the range of implantation dates spans nine years. (Am. Pet., Ex. C.) Further, the surgeons likely practiced different implantation techniques and provided different warnings to their respective patients depending on the medical histories and conditions for treatment. These are important differences in Plaintiffs' individualized claims that make joinder particularly inappropriate here. *See, e.g., In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554585, at *3-4 (E.D. Pa.

16

July 16, 1999) ("[t]he claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement" and "go[] well beyond mere misjoinder.").  In sum, there is no apparent connection among Plaintiffs' claims, beyond the allegations that they were implanted at some point in time with one or more of Ethicon's mesh products.

37. Further, the Amended Petition alleges no facts that show or even suggest that the claims of the New Jersey plaintiff have any nexus with the State of Texas or its courts.  The New Jersey Plaintiff does not allege an injury within the State of Texas and does not allege that she purchased any goods or services from Defendants in the State of Texas.   The New Jersey Plaintiff chose not to join consolidated litigation pending in her state, and she filed her tort claims in a Texas state court that has no personal jurisdiction under the Federal Constitution or the laws of Texas over those claims (or for that matter the tort claims of any other Out Of State Plaintiff).  All of this makes plain that the New Jersey Plaintiff is joined to this case solely in an attempt to defeat removal.

38. Under these circumstances, this Court should reject Plaintiffs' blatant jurisdictional gamesmanship.  *See Au Optronics Corp.*, 134 S. Ct. at 745 ("We have interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction.").

39.    This Court has the authority to sever all claims brought by the New Jersey Plaintiff and retain jurisdiction over the remaining claims.  *See* Fed. R. Civ. P. 21.  "It is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time." *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989) ("Almost every modern Court of Appeals faced with this issue has concluded that it has the

authority to dismiss a dispensable nondiverse party by virtue of Rule 21."), *followed, McNamee-Blount v. Thomas*, 2001 U.S. Dist. LEXIS 13217, at *2 (N.D. Tex. June 19, 2001) ("This Court has the authority to dismiss dispensible nondiverse parties, rather than dismissing the complaint."); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp.2d 555, 567 (N.D. Tex. 2009) ("A district court may dismiss non-diverse defendants under Fed. R. Civ. P. 21 in order to maintain diversity jurisdiction.") (citing *Ralli–Coney, Inc. v. Gates*, 528 F.2d 572, 575–76 (5th Cir.1976)); *see Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009) (citing Rule 21 and affirming the dismissal of non-diverse defendants who were "dispensable parties"); *Hardaway v. Checkers Drive-In Rests., Inc.*, 483 F. App'x 854, 855 (4th Cir. 2012) ("In fact, if the nondiverse defendants are severable and their dismissal will not prejudice the remaining defendants, the jurisdiction of the court should be retained, and the suit dismissed as to the nondiverse defendants."); *In re Propecia (Finasteride) Prods. Liab Litig.*, No. 12-MD-2331, 2013 WL 3729570, *12-14 (E.D.N.Y., May 17, 2013) (severing and remanding the cases of non-diverse plaintiffs who were improperly joined).

40. This Court should sever the New Jersey Plaintiff not only in response to Plaintiffs' jurisdictional gamesmanship, but also to protect the Defendants' constitutional right to remove this action to federal court. *See Terral v. Burke Constr. Co.*, 257 U.S. 529, 532-33 (1922) (holding that foreign corporations have a "federal constitutional right . . . to resort to the federal courts" through exercise of their federal right of removal). A plaintiff cannot defeat a defendant's federal right of removal by naming an unnecessary and dispensable party to the controversy. *See Salem Trust Co. v. Mfrs.' Fin. Co.*, 264 U.S. 182, 190 (1924) ("On the question of jurisdiction, an unnecessary and dispensable party, will not be considered."). As Justice Holmes explained, citing *Salem Trust*: "When a defendant seeks to remove a suit from a State

Court to the District Court, of course he is entitled to contend that a party joined by the plaintiff is not a necessary party and therefore does not make the removal impossible by defeating the jurisdiction." *Lee v. Lehigh Valley Coal Co.*, 267 U.S. 542, 543 (1925).  To protect this right to remove, the Supreme Court does not permit any party to engage in jurisdictional manipulation, even when permissible on its face, to defeat the diversity jurisdiction of the federal district courts.[3]

41. Accordingly, this Court should find that the joinder of the New Jersey Plaintiff to this Texas case is a sham, and sever that Plaintiff from this case.  Upon severance, diversity jurisdiction will exist between the forty-eight remaining Plaintiffs and the Defendants.  The one New Jersey Plaintiff may then be dismissed under Rule 21 for lack of personal jurisdiction.  *See Daimler*, 134 S. Ct. at 760.

### III.  DEFENDANTS HAVE SATISFIED THE PROCEDURAL AND VENUE REQUIREMENTS FOR REMOVAL.

42. Plaintiffs filed their Petition on July 18, 2014.  Plaintiffs have named as defendants Johnson & Johnson and Ethicon, Inc.  Copies of the proceedings from the state court action are attached as Exhibit A.

---

[3] In fact, the Supreme Court and the federal appellate courts have consistently exercised their discretionary authority to fight a variety of manipulative artifices designed to destroy diversity, including (1) naming unnecessary parties as a plaintiff or as a defendant, *Irvine for the Use of Lumberman's Bank v. Lowry*, 39 U.S. 293 (1840); *Salem Trust Co.*, 264 U.S. at 189; (2) improper attempts to realign a party for the purpose of both creating or defeating diversity, *see City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941) (realigning a defendant as a plaintiff and remanding suit to state court based on lack of diversity post-realignment); (3) the naming of nominal parties, *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460, 461 (1980); (4) permissible but nonetheless sham practices by the plaintiff or the defendant, *see Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010); (5) the plaintiff's filing of non-binding stipulations, *see Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013); and (6) improper misjoinder of cases not arising from the same transaction or occurrence, *see Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir., 1996); *In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002) ("the fraudulent misjoinder of plaintiffs is no more permissible that fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

43. Johnson & Johnson and Ethicon, Inc. received a copy of the Summons and First Amended Petition from the Texas Secretary of State on August 4, 2014. Removal is, therefore, timely pursuant to 28 U.S.C. § 1446(b).

44. The 241st Judicial District Court of Texas is located in the Eastern District of Texas, Tyler Division, *see* 28 U.S.C. § 124(c), and venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because the Eastern District of Texas, Tyler Division, embraces the place in which the removed action was pending.

45. No previous application has been made for the relief requested herein.

46. Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d). Defendants will promptly file a copy of this Notice with the Clerk of the 241st Judicial District Court of Smith County, Texas, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants give notice that the matter bearing civil action number 14-1796-A/C in the 241st Judicial District Court of Texas is removed to this Court pursuant to 28 U.S.C. § 1441. Defendants request that this Court retain jurisdiction for all further proceedings in this matter until such time as it is transferred to the appropriate MDL.

THIS, the 25th day of August, 2014.

Respectfully submitted,

/s/ J. Frank Kinsel, Jr.
J. Frank Kinsel, Jr.
State Bar No. 11488700
of
Cantey Hanger, LLP
600 West 6th Street, Suite 300
Fort Worth, Texas  76102

(817) 877-2816  Telephone
(817) 877-2807  Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by certified mail/return receipt requested and via the Court's CM/ECF system on the following on this 25th day of August, 2014.

**VIA CM/RRR #7012 1640 0001 3748 8026**
Tim K. Goss
tim@freeseandgoss.com
Tamara L. Banno
tammy@freeseandgoss.com
Freese & Goss, PLLC
3031 Allen Street, Suite 200
Dallas, Texas  75204

**VIA CM/RRR #7012 1640 0001 3748 8033**
Richard A. Capshaw
richard@capshaw.com
Capshaw & Associates
3031 Allen Street, Suite 201
Dallas, Texas  75204

**VIA CM/RRR# 7012 1640 0001 3748 8040**
David P. Matthews
dmatthews@thematthewslawfirm.com
Julie L. Rhoades
jrhoades@thematthewslawfirm.com
Matthews and Associates
2509 Sackett Street
Houston, Texas  77098

**VIA CM/RRR# 7012 1640 0001 3748 8057**
Peter de la Cerda
peter@edwardsdelacerda.com
Kevin L. Edwards
kevin@edwardsdelacerda.com
Edwards & de la Cerda, P.L.L.C.
3031 Allen Street, Suite 100
Dallas, Texas  75204

/s/ J. Frank Kinsel, Jr.
J. Frank Kinsel, Jr.